FOSTER, Appellee,

v.

FOSTER, Appellant.

[Cite as *Foster v. Foster*, 150 Ohio App.3d 298, 2002-Ohio-6390.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA2001–12–278.

Decided Nov. 25, 2002.

M. Lynn Lampe, for appellee.

Pratt, Singer & Thomas Co., L.P.A., and James Papakirk, for appellant.

WALSH, Presiding Judge.

{¶ 1}  Defendant-appellant, James Keith Foster, appeals from a judgment of the Butler County Court of Common Pleas, Domestic Relations Division, granting the motion of plaintiff-appellee, Terrie L. Foster, to increase appellant's child support obligation.  We affirm the judgment of the trial court.

{¶ 2}  The parties were married and had two children together, Brandon, born August 1, 1992, and Kelsie, born October 10, 1995.  The parties' marriage was terminated by decree of dissolution filed in September 1998.  Pursuant to an agreed shared-parenting plan, appellant's monthly child support obligation was

fixed at $325 per child, per month. Appellant was allocated both dependency tax exemptions for the children.

{¶ 3} In February 2001, appellee filed a motion with the trial court requesting that appellant's child support obligation be increased and that she be allocated the dependency tax exemption for one of the children. Appellee alleged that both parties' incomes had risen and that she now incurred a significant child care expense as a result of her work schedule.

{¶ 4} At a hearing on the motion, appellee presented evidence that she is employed by Kemper Sports Management as an office manager. She earns $10.75 per hour, works 40 hours per week, and receives no overtime pay or bonuses. Extrapolated, her yearly income is $22,360. Due to her full-time employment, appellee incurs a yearly child care expense of $6,100.

{¶ 5} Appellant's income was not so easily ascertainable, since he is self-employed in the auto repair business. Together with a 50 percent partner, he owned Mt. Healthy Auto Body Shop, Inc., an "S" corporation, and S & K Properties LLC, a limited liability corporation. While he submitted his 1998, 1999, and 2000 personal tax returns to the court, he redacted his gross income from the 1999 and 2000 forms. The trial court thus looked to the corporate tax returns to determine appellant's income. The trial court attributed to appellant one half of the amount reportedly paid to corporate officers, and added to this one half of the depreciation deduction claimed by both the corporations. The trial court also determined that appellant had recurring property distributions from the corporations and included this amount in his yearly income as well.

{¶ 6} At the time of the hearing, appellant had sold his interest in both corporations to his partner. Appellant anticipated opening a new, franchised auto repair business in Lebanon. Following the advice of his accountant, appellant planned to reduce his yearly salary to $30,000 for the first several years of the shop's operation. The trial court concluded that to the extent appellant's income was reduced, it was done so voluntarily, and refused to use this lower figure when determining appellant's child support obligation.

{¶ 7} Upon considering the foregoing evidence, the trial court granted appellee's motion in part. Averaging appellant's income over the three prior years, the trial court determined that his yearly income, for purposes of determining child support, was $72,893.67, and increased appellant's monthly child support obligation to $632.77 per child, per month. However, the trial court declined to reallocate the dependency tax exemptions, finding that appellant would receive the greater tax benefit from the deductions. Appellant appeals the trial court's decision, raising three assignments of error.

Assignment of Error No. 1

{¶ 8} "The trial court erred in affirming the magistrate's decision as the decision was against the manifest weight of the evidence and it did not consider evidence in the record."

{¶ 9} We first note that it is well settled that a trial court's decision on a motion to modify child support will not be reversed absent an abuse of discretion. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. An abuse of discretion is more than an error of law or judgment; rather, it implies that the decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 10} Appellant contends that the calculation of his child support obligation was made in error because the trial court failed to consider his year 2000 IRS form W–2 entered into evidence. Rather, the trial court specifically found that appellant failed to submit his W–2 forms for 1999 or 2000. Appellant contends that the income indicated on his W–2 form definitively establishes his yearly income and that the trial court erred by not using this figure when calculating his child support obligation.

{¶ 11} Appellee concedes that the trial court erroneously stated that appellant failed to submit his 2000 W–2 into evidence when he had in fact done so. However, appellee submits that the trial court's failure to consider appellant's 2000 W–2 does not constitute an abuse of discretion. We agree.

{¶ 12} When determining a parent's income for purposes of calculating child support, the trial court must verify the income "with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax returns." R.C. 3119.05.[1] Federal and state tax documents provide a proper starting point to calculate a parent's income, but they are not the sole factor for the trial court to consider. See *Houts v. Houts* (1995), 99 Ohio App.3d 701, 706, 651 N.E.2d 1031.

{¶ 13} In many cases, income for child support purposes is not equivalent to the parent's taxable income. See *Helfrich v. Helfrich* (Sept. 17, 1996), Franklin App. No. 95APF12–1599, 1996 WL 532185. R.C. 3119.01 defines "income" for purpose of calculating child support, as "either of the following: (a) For a parent who is employed to full capacity, the gross income of the parent; (b) For a parent

---

1. In analyzing the motion, the trial court applied R.C. Chapter 3119, which replaced R.C. Chapter 3113, repealed March 22, 2001. Neither party argues that the new statute was applied in error. Accordingly we will review the assignments of error applying R.C. Chapter 3119.

who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent." R.C. 3119.01(C)(5).

{¶ 14} "Gross income" is defined by statute as "the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; * * * and all other sources of income. 'Gross income' includes * * * self-generated income; and potential cash flow from any source." R.C. 3119.01(C)(7).

{¶ 15} At trial, appellant was less than forthright about his annual income. He provided the trial court with income tax returns for the years 1999 and 2000, yet redacted those portions of the returns that refer to his gross income. While appellant argues that the references to his gross income were redacted in order to prevent disclosure of his present wife's income, the redaction effectively precluded the trial court from determining his gross income. The trial court was then left to examine the other evidence before it to determine appellant's gross income. Looking at the tax returns of Mt. Healthy Auto Body, the trial court observed that the corporation paid compensation to its two officers totaling $83,660. S & K Properties did not compensate the corporate officers during these years. The trial court allocated one half of the compensation by Mt. Healthy Auto Body to appellant, one of two corporate officers.

{¶ 16} While the trial court did not consider appellant's 2000 form W–2, its determination of appellant's income is supported by other evidence in the record. Accordingly, we find that the trial court did not abuse its discretion when determining the amount of appellant's gross income for child support purposes. The assignment of error is overruled.

### Assignment of Error No. 2

{¶ 17} "The trial court erred in calculating child support where it included the full amount of depreciation expenses of Mt. Health [sic] Auto Body, Inc. without regard to the nature of the depreciation."

{¶ 18} In his second assignment of error, appellant contends that the trial court erred by attributing to him one half of the depreciation deductions for both Mt. Healthy Auto Body, Inc. and S & K Properties, LLC. The corporate tax returns indicate that both corporations took depreciation deductions in 1998, 1999, and 2000.

{¶ 19} When determining the gross income of a self-employed parent, the trial court is to deduct ordinary and necessary expenses from the parent's gross receipts. Pursuant to R.C. 3119.01(C)(9)(b), ordinary and necessary expenses "[do] not include depreciation expenses and other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's business," except as "specifically included in 'ordinary and necessary expenses incurred in generating gross receipts' by division (C)(9)(a) of this section[.]" R.C. 3119.01(C)(9)(a) defines ordinary and necessary expenses as "actual cash items expended * * * and includes depreciation expenses of business equipment." The exclusion of other types of depreciation deductions "is designed to ensure that a parent's gross income is not reduced by any sum that was not actually expended in the year used for computing child support." *Baus v. Baus* (1991), 72 Ohio App.3d 781, 784, 596 N.E.2d 509.

{¶ 20} Appellant contends that the depreciation expenses incurred by the corporations in 1998, 1999, and 2000 are attributable solely to business equipment items, such as desks, chairs, cabinets, and computers, and expensed as actual cash items for those years. Thus appellant concludes that the trial court erred by considering the depreciation as a noncash expense under R.C. 3119.01(C)(9)(b).

{¶ 21} Contrary to appellant's contention, the record does not indicate that the items for which the depreciation deductions were taken represent actual cash expenses incurred in the year in which the deductions were claimed. Appellant testified that the deductions for S & K Properties were for building depreciation while at least a portion of the Mt. Healthy Auto Body deductions were related to building improvements when the shop was first purchased. He also testified that the deductions reflect depreciation for office equipment and shop tools and equipment, but did not testify that the actual cash expenditures were made in the tax years in which the deductions were claimed.

{¶ 22} Appellant's accountant, Steven Potter, testified that Mt. Healthy Auto Body took a "Section 179" expense deduction of $7,947 in 2000 for computers and office furniture purchased that year. According to Potter, the total depreciation deduction claimed that year by Mt. Healthy Auto Body was $24,317. Review of the magistrate's decision reveals that the trial court excluded the $7,947 depreciation deduction for ordinary and necessary expenses when determining the total depreciation deduction attributable to appellant.[2] Potter's testimony otherwise confirms that the depreciation deductions were not based on actual cash expenses during the reporting tax year.

---

2. The trial court added a total of $10,815 to appellant's 2000 gross income for depreciation deductions. This figure is derived by subtracting $7,947 from the $24,317 depreciation deduction claimed by Mt. Healthy Auto Body, dividing it in half, and adding to it half of the depreciation deduction claimed by S & K Properties, $5,260.

{¶ 23} The type of items for which some of the depreciation deductions were taken may be considered necessary and ordinary expenses. However, the actual cash expense must be incurred in the same tax year in order to exclude the depreciation deduction from the calculation of gross receipts under R.C. 3119.01(C)(9)(b). Absent evidence that the depreciation deduction represents actual cash expenses incurred in the year that the deduction was taken, R.C. 3119.01(C)(9) mandates that the depreciation deduction be included in the parent's gross income for that year. See, also, *Baus,* 72 Ohio App.3d at 784, 596 N.E.2d 509.

{¶ 24} Upon review of the record, we conclude that the trial court did not abuse its discretion by including one half of the depreciation deductions when calculating appellant's gross income. The second assignment of error is overruled.

Assignment of Error No. 3

{¶ 25} "The trial court erred in finding that the property distributions received by Mr. Foster in 1998, 1999, and 2000 are includable as income in computing child support."

{¶ 26} Appellant received property distributions from Mt. Healthy Auto Body and/or S & K Properties in 1998, 1999, and 2000. The trial court found that these distributions were a source of recurring income since appellant "consistently received such distributions." The trial court accordingly included the distributions in appellant's gross income for each corresponding year.

{¶ 27} Under R.C. 3119.01(C)(7), nonrecurring income is excluded from a parent's yearly gross income when calculating child support. "Nonrecurring income" is defined as "an income or cash flow item the parent receives in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis." R.C. 3119.01(C)(8). Our review of the record confirms that appellant consistently received cash distributions, not reflected on his W–2, from Mt. Healthy Auto Body and S & K Properties. We therefore find no abuse of discretion in the trial court's conclusion that appellant could expect to receive such distributions in the future.

{¶ 28} Appellant argues that he can no longer expect to receive the yearly distributions because he has sold his interest in both corporations. The trial court considered this fact and found that appellant was voluntarily underemployed to the extent that he chose to lower his income in the immediate future.

{¶ 29} The determination that a parent is voluntarily underemployed will not be reversed absent an abuse of discretion. *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 112, 616 N.E.2d 218. The record indicates that appellant

voluntarily sold his interest in the two corporations in order to pursue a new business opportunity, one that he hopes will be even more lucrative than his prior ventures. However, the immediate effect of appellant's decision is to reduce his annual income by more than $30,000. Accordingly, we find that the trial court did not abuse its discretion by finding appellant voluntarily underemployed. Accord *Woloch v. Foster* (1994), 98 Ohio App.3d 806, 649 N.E.2d 918.

Judgment affirmed.

POWELL and WILLIAM W. YOUNG, JJ., concur.