[Cite as *Jackowski v. Jackowski*, 2013-Ohio-5545.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Keith E. Jackowski, :

     Plaintiff-Appellee, :

                                            No. 13AP-183

v. : (C.P.C. No. 10JU-04-4734)

Abigail L. Jackowski, : (REGULAR CALENDAR)

     Defendant-Appellant. :

---

D E C I S I O N

Rendered on December 17, 2013

---

*Craig P. Treneff Law Office*, and *Craig P. Treneff*, for appellee.

*Jo Hans Kaiser*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations.

KLATT, P.J.

{¶ 1} Defendant-appellant, Abigail L. Jackowski, appeals a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, that determined the amount of child support owed by plaintiff-appellee, Keith E. Jackowski. For the following reasons, we affirm in part and reverse in part.

{¶ 2} The parties divorced in 2008. In the divorce decree, the trial court ordered Keith to pay child support for the parties' minor child. The Franklin County Child Support Enforcement Agency ("FCCSEA") reviewed the child support order in April 2012 and recommended an increase in the amount of monthly child support. Keith requested a court review of FCCSEA's recommendation.

{¶ 3}    In Ohio, the parents' incomes serve as the starting point for determining the amount of child support owed.  Here, the parties dispute how Keith's income should be calculated.  At an evidentiary hearing before a magistrate, Keith introduced copies of his 2009, 2010, and 2011 tax returns and, referencing those returns, explained how he determined his income.

{¶ 4}    Throughout 2011 and the majority of 2010, Keith worked as an independent contractor, selling life insurance for Lincoln Heritage Life Insurance Company.  To determine his taxable income for 2010 and 2011, Keith subtracted his business expenses from the gross receipts he earned as an independent contractor.  As reflected in Schedule C to Keith's 2010 tax return, his 2010 business expenses amounted to $43,429.  Subtracting that amount from $64,093 in gross receipts, Keith arrived at $20,664.  After adding to that sum the $3,900 in additional income he earned in 2010, Keith determined that his 2010 gross income equaled $24,564.

{¶ 5}    Keith's 2011 Schedule C shows gross receipts of $155,290, from which Keith subtracted business expenses of $82,244, to arrive at $73,046.  Combining that sum with the $230 in other income he earned in 2011, Keith calculated his 2011 gross income at $73,276.

{¶ 6}    In relevant part, Keith argued that FCCSEA erred in calculating his income because it did not deduct from his gross receipts all the business expenses shown on the Schedule C forms attached to his 2010 and 2011 tax returns.  Abigail took the position that none of the Schedule C business expenses should be deducted.

{¶ 7}    In her decision, the magistrate deducted only those business expenses that she believed Keith sufficiently proved through documentary evidence.  Keith objected and contended that the magistrate should have deducted all the business expenses listed in the Schedule C forms.  In a February 15, 2013 judgment, the trial court agreed with Keith and calculated his 2010 and 2011 incomes by subtracting all the Schedule C expenses from each year's gross receipts.

{¶ 8}    Abigail now appeals from the February 15, 2013 judgment, and she assigns the following errors:

> I. The trial court erred to the prejudice of Appellant-Mother in calculating child support when it failed to properly calculate the Plaintiff-Appellee's gross income for child support

> purposes according to Ohio Rev. Code § 3119.01 (C) (7) and Ohio Rev. Code § 3119.01 (C) (9) (a).
>
> II. The trial court's award of child support of $442.62, plus processing fee, is unjust and inequitable and was arrived at erroneously.
>
> III. The trial court's decision impermissibly and unconstitutionally applied Ohio Rev. Code § 3105.73 to the instant case.
>
> IV. The trial court abused its discretion by relying only upon Father's federal income tax returns, which were provided by Appellee, but never admitted into evidence. Ohio Rev. Code § 3119.05.

{¶ 9} Abigail's first and second assignments of error are interrelated, so we will discuss them together. By those assignments of error, Abigail makes two arguments: (1) the trial court did not have before it sufficient evidence to find that Keith actually incurred the business expenses that he claimed, and (2) the trial court erroneously allowed deductions from Keith's gross receipts for non-cash expenses.

{¶ 10} A trial court has considerable discretion in the calculation of child support. *Pauly v. Pauly*, 80 Ohio St.3d 386, 390 (1997). A reviewing court will not reverse a child support order absent a showing that the trial court abused its discretion. *Morrow v. Becker*, ___ Ohio St.3d ___, 2013-Ohio-4542, ¶ 9.

{¶ 11} Generally, a trial court uses the basic child support schedule and applicable child support computation worksheet to calculate the amount of an obligor parent's child support obligation. R.C. 3119.02. To complete the child support worksheets, a trial court must first determine each parent's income. R.C. 3119.022 and 3119.023. For a parent employed to full capacity, "income" means the "gross income of the parent." R.C. 3119.01(C)(5)(a). According to R.C. 3119.01(C)(7), "gross income" is "the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes * * * self-generated income." R.C. 3119.07(C)(13) defines "self-generated income" as "gross receipts received by a parent from self-employment * * * minus ordinary and necessary expenses incurred by the parent in generating the gross receipts." Pursuant to R.C. 3119.07(C)(9):

(a) "Ordinary and necessary expenses incurred in generating gross receipts" means actual cash items expended by the parent or the parent's business and includes depreciation expenses of business equipment as shown on the books of a business entity.

(b) Except as specifically included in "ordinary and necessary expenses incurred in generating gross receipts" by division (C)(9)(a) of this section, "ordinary and necessary expenses incurred in generating gross receipts" does not include depreciation expenses and other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's business.

{¶ 12} The parties agree that Keith was self-employed in 2010 and 2011. Thus, for those years, Keith's self-generated income equals his gross receipts minus the "ordinary and necessary expenses incurred in generating gross receipts." By her first argument, Abigail challenges the quality and quantity of the evidence that Keith offered to prove the expenses that he sought to deduct from his gross receipts.

{¶ 13} A parent must verify his or her income "with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax returns." R.C. 3119.05(A). By mandating the production of suitable documents to demonstrate business expenses, this rule prevents self-employed parents from engaging in "creative accounting." *Dannaher v. Newbold*, 10th Dist. No. 05AP-172, 2007-Ohio-2936, ¶ 5, 14.

{¶ 14} Here, Keith introduced his 2010 and 2011 tax returns with the schedules supporting those tax returns. Keith testified that the tax returns and schedules were copies of the paperwork actually filed with the Internal Revenue Service ("IRS"). He also explained how he incurred the business expenses listed in the Schedule C forms.

{¶ 15} The trial court found Keith's evidence sufficient to substantiate the existence and amount of Keith's business expenses. Abigail contests this finding. She contends that Keith could not prove his business expenses without also presenting receipts, expense vouchers, and other "primary documents" evincing those expenses. We agree with Abigail that additional documentary evidence would have strengthened the credibility of the evidence adduced. Nevertheless, we cannot conclude that the trial court abused its

discretion in finding that Keith's evidence sufficiently proved most of his 2010 and 2011 business expenses. Under R.C. 3119.05(A), tax returns and the supporting schedules are a "suitable" means of establishing a parent's income. With Keith's testimony explicating most of the amounts entered on the tax forms, the trial court had before it evidence from which it could calculate Keith's income. The trial court adjudged that evidence competent and credible, and we will not second-guess that exercise of discretion. *See Barton v. Pardi*, 10th Dist. No. 11AP-551, 2012-Ohio-4172, ¶ 20 (no abuse of discretion in weighing the evidence—the father's testimony regarding undocumented business expenses and his tax returns—and determining that the expenses existed and would be deducted from the gross receipts).

{¶ 16} Although Keith elucidated most of his claimed business expenses, he could not explain one expense. In the Schedule C attached to his 2011 tax return, Keith listed a $1,336 expense on line 16b for "Other Interest." Keith and his attorney engaged in the following colloquy regarding this expense:

> Q. Okay. If I direct your attention to Line 16B under interests [sic], there is an item of $1,336 for interest. What does that account for? What's that expense?
>
> A: Honestly, I don't know.
>
> Q: Are you paying credit card interest?
>
> A: No.
>
> Q: Do you have loan interest?
>
> A: No.
>
> Q: Do you have any kind of a pay back to [Lincoln Heritage Life Insurance Company] that involves payment of interest?
>
> A: Of interest, no.
>
> Q: Okay. So, you cannot verify the 1336 as a deductible expense?
>
> A: Unless it is for licensing that I have to pay for. Continued education that I have to do every two years.

(Tr. 17-18.)   Later, Keith testified that the cost of his licensing and continuing education appeared on line 23 of Schedule C under "Taxes and licenses."   Thus, Keith could not verify the $1,336 entered on line 16b as a business expense.   Given Keith's inability to explain the $1,336, the evidence is not sufficient to establish that alleged expenditure as a business expense.

{¶ 17} We next turn to the question of whether Keith's Schedule C business expenses qualify as deductible expenses under R.C. 3119.07(C)(9).   Inclusion of business expenses in Schedule C does not guarantee deduction of those expenses in the calculation of child support.   Particularly when a parent's income is self-generated, the parent's taxable income may not equal the parent's income as calculated for child support purposes.   *Wolf-Sabatino v. Sabatino*, 10th Dist. No. 10AP-1161, 2011-Ohio-6819, ¶ 96; *Wood v. Wood*, 10th Dist. No. 10AP-513, 2011-Ohio-679, ¶ 42; *Dannaher*, 2007-Ohio-2936, at ¶ 12.   As first recognized by this court in *Helfrich v. Helfrich*, 10th Dist. No. 95APE12-1599 (Sept. 17, 1996):

> [T]he purposes underlying the Internal Revenue Code and the child support guidelines are vastly different.   The tax code permits or denies deduction from gross income based on myriad economic and social policy concerns which have no bearing on child support.   The child support guidelines in contrast are concerned solely with determining how much money is actually available for child support purposes.

Consequently, a trial court must not blindly accept all of the business expenses deducted on tax returns as "ordinary and necessary expenses incurred in generating gross receipts." *Wood* at ¶ 42.

{¶ 18} Under R.C. 3119.01(C)(9), a trial court may deduct an expense if it is an ordinary and necessary expense of the parent's business and it arises from an actual cash expenditure.   *Kamm v. Kamm*, 67 Ohio St.3d 174 (1993), paragraph one of the syllabus (construing an earlier version of R.C. 3119.01(C)(9) that set forth a definition of "ordinary and necessary expenses incurred in generating gross receipts" identical to the current definition in the relevant respects).   Generally, non-cash expenses may not be deducted from the parent's gross receipts.   R.C. 3119.01(C)(9)(b).   This rule ensures that "a parent's gross income is not reduced by any sum that was not actually expended in the year used for computing child support." *Foster v. Foster*, 150 Ohio App.3d 298, 2002-Ohio-6390,

¶ 19.  There is an exception, however, for a certain kind of depreciation expense.  A trial court may deduct depreciation expenses if those expenses are for "business equipment as shown on the books of a business entity."  R.C. 3119.01(C)(9)(a).

{¶ 19} Here, Abigail initially argues that the trial court did not have enough evidence to determine whether the expenses Keith claimed were cash or non-cash expenses.  Since generally only "actual cash items" can be deducted, such a dearth of evidence would prevent the trial court from differentiating between allowable and non-allowable deductions.  Abigail, however, incorrectly assesses the evidence.  Between the information contained in the tax returns and schedules and Keith's testimony, the trial court had sufficient information to identify the nature of the expenses.

{¶ 20} Next, Abigail argues that the trial court erroneously allowed the deduction of non-cash expenses.  The only such expense that Abigail points to is the "Car and truck expenses" shown on line 9 of the Schedule C forms attached to Keith's 2010 and 2011 tax returns.

{¶ 21} The Internal Revenue Code allows a deduction for ordinary and necessary expenses a taxpayer incurs while carrying on a business, including the cost of operating an automobile to the extent that the taxpayer uses the automobile in his or her business.  26 U.S.C. 162(a).  A taxpayer may calculate this deduction by adding up all the actual costs allocable to traveling business miles.  Rev.Proc. 2010-51, 2010-2 C.B. 883, Sec. 4.01.  Alternatively, a taxpayer may use the business standard mileage rate published yearly by the IRS.  *Id.*  Under this second method, a taxpayer determines the amount of the standard mileage deduction by multiplying the number of business miles traveled by the business standard mileage rate.  *Id.*

{¶ 22} The standard mileage deduction provides taxpayers with a simpler method of accounting for the actual costs associated with driving for business purposes, including the costs for depreciation, maintenance and repairs, tires, gasoline, oil, insurance, and license and registration fees.  *Id.* at Sec. 4.02.  With the exception of depreciation, all of these costs are cash items expended in furtherance of business.  Thus, for the most part, the standard mileage deduction is equivalent to a cash expense.  As the equivalent of a cash expense, the majority of the standard mileage deduction constitutes an "ordinary and necessary expense incurred in generating gross receipts."  *Phillips v. Phillips*, 113

Ohio App.3d 868, 872-73 (11th Dist.1996); *Neal v. Halsey*, 2d Dist. No. 95-CA-22 (Dec. 20, 1995). *But see Plute v. Plute*, 5th Dist. No. 1995CA00342 (July 15, 1996) (holding that the standard mileage deduction was not an "ordinary and necessary expense in generating gross receipts" because it did not represent an actual cash expenditure). As stated in *Phillips*:

> [T]he standard mileage deduction is not intended to place a value upon a noncash item. Instead, it is intended to place a value upon an actual cash item. The standard mileage deduction merely recognizes the inherent difficulties a taxpayer faces in attempting to demonstrate the actual cost of all expenses he has incurred in relation to his car over an entire year, and gives a taxpayer an opportunity to derive some benefit from those expenses by only requiring him to show the actual amount of miles he has traveled. From this, it follows that a parent should be allowed to use this deduction for purposes of determining his child support obligation * * *.

*Id.* at 873.

{¶ 23} The depreciation expenses enfolded into the standard mileage deduction may also qualify as "ordinary and necessary expenses incurred in generating gross receipts," but require special analysis. As we stated above, depreciation expenses are only "ordinary and necessary expenses incurred in generating gross receipts" if they are "depreciation expenses of business equipment as shown on the books of a business entity." R.C. 3119.01(C)(9)(a). Here, Keith offered no evidence that his car constituted business equipment (as opposed to a personal vehicle used in the course of business). He also failed to offer any evidence that he accounted for depreciation expenses related to his car on the books of a business entity. Keith, therefore, cannot deduct the depreciation expenses included in the standard mileage deduction from his gross receipts.

{¶ 24} Given our analysis, we conclude that the trial court erred in deducting the entirety of Keith's automobile business expenses from his 2010 and 2011 gross receipts. We also conclude that the trial court erred in deducting $1,336 that Keith could not verify as a business expense. Accordingly, we sustain in part and overrule in part Abigail's first and second assignments of error.

{¶ 25} On remand, the trial court must redo the child support computation worksheet. We offer the following guidance. For automobiles used for business purposes,

the portion of the standard mileage rate treated as depreciation was 23 cents per mile in 2010 and 22 cents per mile in 2011. IRS Notice 2010-88, Sec. 3. In 2010, Keith calculated his standard mileage deduction at $11,876, of which $5,462.50 related to depreciation (23,750 business miles x $0.23 = $5,462.50). Thus, for child support purposes, Keith's 2010 gross receipts amounted to $26,126.50 ($20,664 previous gross receipts + $5,462.50 = $26,126.50). His 2010 gross income, therefore, was $30,026.50 ($26,126.50 + $3,900 in other income = $30,026.50).

{¶ 26} In 2011, Keith calculated his standard mileage deduction at $16,057, of which $6,633.66 related to depreciation (30,153 business miles x $0.22 = $6,633.66). Thus, for child support purposes, Keith's 2011 gross receipts amounted to $81,051.66 ($73,046 previous gross receipts + $6,633.66 + $1,336 unproven interest deduction = $81,015.66). His 2011 gross income, therefore, was $81,245.66 ($81,015.66 + $230 in other income = $81,245.66).[1]

{¶ 27} We next turn to the remaining assignments of error. In her reply brief, Abigail concedes that neither her third nor fourth assignments of error have merit. Consequently, we overrule those assignments of error without discussion.

{¶ 28} For the foregoing reasons, we sustain in part and overrule in part the first and second assignments of error, and we overrule the third and fourth assignments of error. We affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, and we remand this matter to that court so that it may recalculate Keith's child support obligation.

*Judgment affirmed in part, reversed in part; cause remanded with instructions.*

TYACK and CONNOR, JJ., concur.

---

[1] We note that Keith, as a self-employed parent, is entitled to a deduction of either "5.6% of adjusted gross income or the actual marginal difference between the actual rate paid by the self-employed individual and the F.I.C.A. rate." R.C. 3119.022. Our analysis does not incorporate this deduction for either 2010 or 2011. We leave it to the parties and the trial court to determine the amounts of those deductions on remand.